UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| DONALD CABLE, ) | |
| ) | Civil No. 3:19-CV-00015-GFVT |
| Plaintiff, ) | |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| MIDLAND FUNDING, LLC, *et al.*, ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |

*** *** *** ***

Plaintiff Donald Cable discovered that his delinquency with Defendant Commonwealth Credit Union (CCU) was disclosed by several credit reporting agencies. In his Complaint, Mr. Cable asserts that CCU and the credit reporters failed to investigate and correct the allegedly false credit reports, notwithstanding his notice to them that such reports were mistaken. Mr. Cable initiated this suit to recover against the defendants for their alleged violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, as well as the two-state law tort claims of defamation and negligence. Defendant CCU has moved to dismiss all claims against it, and for the following reasons, the motion to dismiss is **GRANTED**.

**I**

Around October 2018, Mr. Donald Cable became aware that Commonwealth Credit Union (CCU) recorded with three credit reporting agencies (also defendants in this suit) that Mr. Cable was delinquent to the tune of $4,724.00. [R. 1 at ¶ 27.] The credit reports apparently indicated that CCU had "charged off" the same amount, prompting Mr. Cable to dispute the debt's validity with all three credit reporters. *Id.* at ¶ 28. CCU was notified of the dispute, and in January 2019, it verified the accuracy of the credit reports that Mr. Cable was in fact delinquent.

[R. 18-1 at 2.] On March 7, 2019, Plaintiff brought this action for negligence, defamation, and violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, for Defendants' alleged false credit reporting and failure to investigate Mr. Cable's dispute thereof. [R. 1 at ¶ 1.] Defendant CCU seeks to have all claims against it dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Cable failed to file a response, and the time to do so has now expired. [R. 28.]

## II

CCU argues, pursuant to Federal Rule of Civil Procedure 12(b)(6), that each of the theories for relief contained in the Complaint fails to state a claim upon which relief may be granted and must be dismissed. [R. 18-1 at 1.] A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court has explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible." *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556). "Plausibility" then, is the benchmark the factual allegations contained in Plaintiffs' Complaint must meet in order to defeat CCU's Motion to Dismiss.

Mr. Cable's Complaint asserts four causes of action against CCU: (1) willful violation of the FCRA § 1681s-2b; (2) negligent violation of the FCRA § 1681s-2b; (3) negligence; and (4) defamation. [R. 1 at ¶ 1.]

### A

Congress enacted the FCRA in 1968 in order to promote "efficiency in the Nation's banking system and to protect consumer privacy." 15 U.S.C. § 1681. More specifically, the Sixth Circuit has noted that "the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and [aimed] at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner." *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961, 965 (6th Cir. 1998).

Mr. Cable claims that CCU willfully and negligently violated § 1681s-2(b) of the FCRA. [R. 1 at ¶¶ 94, 115]; 15 U.S.C.S. § 1681n ("Civil liability for willful noncompliance"); 15 U.S.C.S. § 1681o ("Civil liability for negligent noncompliance"). Specifically, Mr. Cable alleges "Commonwealth's failure to investigate Plaintiff's dispute and its initial and continued false reporting" amount to violations of the FCRA. [R. 1 at ¶¶ 93, 114.]

Section 1681s-2b of the FCRA lays out the "[d]uties of furnishers of information upon notice of dispute." "Upon receiving notice from a credit reporting agency that a consumer disputes the information a furnisher has provided, the furnisher is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation." *Bach v. First Union Nat'l Bank*, 149 Fed. Appx. 354, 358 (6th Cir. 2005) (citing § 1681s-2(b)(1)(A)-(E)).

3

The Complaint acknowledges that CCU was notified of Mr. Cable's dispute and CCU subsequently verified the debt with the credit reporting agencies, [R. 1 at ¶¶ 30–31], but leaves the Court left to guess as to CCU's precise investigative failure—either willful or negligent. Mr. Cable presumably believes that, given the "charged off" status of his debt, [R. 1 at ¶ 28], CCU should have arranged for the credit reporters to cease the reporting of Mr. Cable's delinquency. However, the Court agrees with CCU that a "charge off" does not mean what Mr. Cable understands it to.

The "charge off" of a debt does not equate to its "discharge," which is the subject matter of Mr. Cable's quoted regulation—26 C.F.R. § 6050P-1(b)(2)(i)(G). [R. 1 at ¶ 28.] When a lender determines a debt is "uncollectable and at least partially worthless," the company can "charge off" the debt, permitting the original lender to sell the debt to another party and recoup a portion of the lost investment. *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d 443, 445–46 (6th Cir. 2014). Indeed, a "charge off" is an accounting method utilized by companies to reduce their tax liability; it is not the discharge (or nullification) of an existing debt. *Id.*; *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010) ("charged off debt is not forgiven");

Moreover, "charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016). Therefore, to the extent that Mr. Cable's debt was "charged off," CCU was within its rights to affect its collection. As such, Mr. Cable's claims as to CCU's violations of FCRA § 1681s-2(b) must be dismissed.

**B**

Mr. Cable also raises two state law claims for negligence and defamation. CCU argues that these claims are preempted by FCRA 15 U.S.C. § 1681t(b). [R. 18-1 at 7.] The Court

agrees, though not on the exact basis for which CCU argues. The FCRA has two preemption provisions: 15 U.S.C. §§ 1681t(b)(1)(F) and 1681h(e), for common law claims—here, defamation and negligence—that arise from the statute's subject matter. However, the preemptions conflict inasmuch as "§ 1681h(e) permits state tort claims, but requires a higher standard of proof for those in the nature of defamation, slander, or invasion of privacy, while § 1681t(b)(1)(F) prohibits all state claims covered by § 1681s-2." *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 785 (W.D. Ky. 2003). The Sixth Circuit has yet to provide direction on how to best reconcile these contrary provisions, *see Eddins v. Cenlar FSB*, 964 F. Supp. 2d 843, 850–51 (W.D. Ky. 2013) ("[p]erhaps at this point some judges with a higher pay grade should resolve the issue"), and multiple approaches have been adopted in other district courts. *See id.*

While these two provisions might seem contradictory on the face of the statute, Judge Easterbook of the Seventh Circuit Court of Appeals has clarified how the two provisions operate together:

> [W]e do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims. Section 1681h(e) does not create a right to recover for willfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same legislation also added § 1681s-2. The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.
>
> Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication. It is that the statutes are compatible: the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more. There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting a speed limit of 55. It is easy to comply with both: don't drive more than 55 miles

per hour. Just as the later statute lowers the speed limit without repealing the first (which means that, if the second statute should be repealed, the speed limit would rise to 60 rather than vanishing), so § 1681t(b)(1)(F) reduces the scope of state regulation without repealing any other law. This understanding does not vitiate the final words of § 1681h(e), because there are exceptions to § 1681t(b)(1)(F). When it drops out, § 1681h(e) remains. But, even if our understanding creates some surplusage, courts must do what is essential if the more recent enactment is to operate as designed.

*Purcell v. Bank of America*, 659 F.3d 622, 625 (7th Cir. 2011). At least one district court in this Circuit that has considered this issue has reached a similar conclusion. *See Stafford*, 262 F.Supp. at 785–86. Therefore, the Court must first consider whether Mr. Cable's claims are preempted by § 1698t(b)(1)(F), with the secondary provision of §1681(h)(e) only factoring in the decision if the former does not apply.

Section 1698t(b)(1)(F) states, "No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under…(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." § 1698t(b)(1)(F). According to the Complaint, Mr. Cable's negligence claim is based on "Commonwealth's failure to investigate Plaintiff's disputes and its false reporting to Equifax, Trans Union, and Experian . . .." [R. 1 at ¶ 49.] The defamation claim, though plead insufficiently, seems to be based on CCU's alleged false reporting. *Id*. at ¶ 75. In his words, "Commonwealth's publication of false statements regarding Plaintiff's creditworthiness and the alleged past due Commonwealth account amounts to defamation and defamation *per se* of the Plaintiff…" *Id*. at ¶ 76. Therefore, it is clear from the Complaint that Mr. Cable's state law claims for negligence and defamation are based on the allegedly inaccurate reporting of the furnisher, CCU, which is the exact type of conduct regulated under § 1681s-2. As a result, both of Mr. Cable's claims are preempted by § 1698t(b)(1)(F), making dismissal appropriate.

Even if not preempted, it is likely that Mr. Cable's state law claims would still meet the same fate. To recover for negligence in Kentucky, a plaintiff must show that the defendant owed the plaintiff a duty; that the defendant breached that duty; and that the breach caused an injury to the plaintiff. *Illinois Cent. R.R. v . Vincent*, 412 S.W.2d 874, 875–76 (Ky. 1967). Whether a defendant had a duty to the plaintiff is a question of law for the court, and without a duty there is no negligence. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Kentucky courts have suggested that, "the failure to perform a contractual obligation typically does not give rise to a cause of action in tort," unless the plaintiff can show that the defendant had an independent legal duty to act. *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 836 (Ky. Ct. App. 2007) (citing *Jones v. Hartford Life and Accident Ins. Co.*, 443 F.Supp.2d 3, 5 (D.D.C. 2006)).

As the relationship between CCU and Mr. Cable was contractual, the sustainability of Mr. Cable's negligence claim against CCU turns on whether a lender owes an independent duty of care to its borrower. *Jones*, 443 F.Supp.2d at 5. Kentucky law is clear that "except in special circumstances, a bank does not have a fiduciary relationship with its borrowers." *Layne v. Bank One Kentucky, N.A*, 395 F.3d 271, 281 (6th Cir. 2005) (citing *Sallee v. Fort Knox Nat'l Bank, N.A.*, 286 F.3d 878, 893 (6th Cir. 2002)). Mr. Cable's Complaint simply fails to identify any special circumstances that exist here. Moreover, to the extent that § 1681s-2b of the FCRA lays out the "[d]uties of furnishers of information upon notice of dispute," it is not clear to the Court that CCU ever breached those duties which were triggered by Mr. Cable's initiation of the dispute; the Court need not "accept as true [Mr. Cable's] legal conclusion" that CCU failed to investigate his dispute, *Twombly*, 550 U.S. at 556, and the Complaint itself acknowledges that CCU verified the debt with the credit reporting agencies. [R. 1 at ¶¶ 30–31.] Without an

independent duty, or factual allegations evidencing breach of CCU's statutory duties, Mr. Cable would be unable to raise his state law negligence claim regardless of preemption.

It is equally evident that Mr. Cable's defamation claim would be dismissed if it were not preempted. Under Kentucky law, to establish a *prima facie* case of defamation, a plaintiff must show proof of published, defamatory language about the plaintiff, which causes injury to his or her reputation. *Columbia Sussex Corp., Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App 1981); *see also Williams v. Blackwell*, 487 S.W.3d 451, 454 (2016) (holding the same) (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004)). For a statement to be actionable as defamation, a plaintiff must show that the statement is sufficiently factual to be provable as false, or the statement must imply underlying facts which can be provable as false. *Williams*, 487 S.W.3d at 454 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 111 L. Ed. 2d 1 (1990)). Truth of the statement, however, remains a complete defense. *Stringer*, 151 S.W.3d at 796.

Mr. Cable asserts that CCU's reports to the credit agencies amount to defamation. [R. 1 at ¶ 76.] Specifically, Mr. Cable alleges that "Commonwealth, with knowledge of the falsity of its statements, has published and continues to publish statements to others… that Plaintiff has a past due and payable Commonwealth account." *Id.* at ¶ 75. However, to the extent that a charge off does not relinquish a debt, as discussed previously, *supra A*, Mr. Cable *does* have a past due and payable Commonwealth account. Truthful statements do not constitute defamation, and therefore Mr. Cable would be unable to raise his state law defamation claim were it not already preempted.

### III

Unfortunately for Mr. Cable, a "charge off" does not mean a "discharge," and therefore, he still owes the debt he incurred from Commonwealth Credit Union. Because of this distinction, Mr. Cable's claims against Defendant Commonwealth Credit Union fail to state a claim upon which relief may be granted. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that Defendant Commonwealth Credit Union's Motion to Dismiss [**R. 18**] is **GRANTED**. All claims by Plaintiff Donald Cable against Defendant Commonwealth Credit Union are **DISMISSED WITH PREJUDICE**.

This the 11th day of July 2019.

Gregory F. Van Tatenhove
United States District Judge